John Leonard **ECKER**, Plaintiff,

v.

**UNITED STATES**, Defendant.

Civil Action No. 01–11310–NMG.

United States District Court,
D. Massachusetts.

Jan. 31, 2008.

Neil Thomas Smith, Roberto M. Braceras, Joseph F. Savage, Jr., Goodwin Procter, LLP, Boston, MA, for Plaintiff.

Mary Elizabeth Carmody, Mark T. Quinlivan, U.S. Attorneys Office, Boston, MA, Mary Jo Madigan, United States Attorney's Office, Minneapolis, MN, for Defendant.

## MEMORANDUM & ORDER

GORTON, District Judge.

The plaintiff, John Leonard Ecker ("Ecker"), was originally arrested on

charges of felony possession of a firearm in 1989. He has remained in the custody of the Federal Bureau of Prisons ("BOP") for mental health treatment due to the reports by his wardens and doctors that his mental illness rendered him a danger to others should he be released. Most recently, however, the Risk Assessment Panel reviewing his case decided that Mr. Ecker no longer required inpatient care and recommended him for conditional release. This Court convened a status conference on November 20, 2007, to discuss that Panel's report and informed the parties that such conditional release should be effected as soon as an appropriate plan could be formulated. Before the Court are 1) the Warden's proposed plan of conditional release, 2) Ecker's response to it, 3) the government's motion for reconsideration and retransfer to the District of Minnesota and 4) the government's motion for a conditional release hearing pursuant to 18 U.S.C. § 4246(e).

## I. Background

In a Memorandum and Order entered on November 21, 2007, this Court ordered the Warden of the Medical Center for Federal Prisoners (MCFP) in Springfield, Missouri to devise a plan for Ecker's conditional release and to submit it to the Court on or before January 22, 2008. Such a plan was to provide for a period of not more than six months' residence at an appropriate facility and for a smooth transition of Ecker's supervision from federal to state control.

The Warden has submitted a proposed plan for conditional release. Although the dates and terms are not in strict accord with this Court's order, it is evident that the plan is a good faith effort to effect a transfer of Ecker's supervision to state control. Accordingly, this Court will, with acknowledged appreciation, utilize the Warden's proposal as a basis for its order of conditional release.

## II. The Warden's Proposal

The Warden of MCFP Springfield, Marty C. Anderson ("the Warden") has submitted to this Court a plan for Ecker's conditional release. In broad outline, the Warden's proposal is as follows:

1) Ecker is to spend at least six months in the general population at MCFP Springfield.

2) Ecker is to be transferred to a facility operated by the Massachusetts Department of Mental Health ("DMH"), most likely the Worcester State Hospital ("WSH").

3) During the time that he is housed at WSH, Ecker is to comply with certain specific conditions, including

a) voluntarily to continue his medical treatment,

b) to refrain from the use of alcohol and illegal drugs,

c) to abstain from owning or possessing firearms,

d) to abstain from any contact with previously identified female victims of unwanted attention, etc.

4) For an indefinite period of time following his release from federal custody, the United States Probation Department is to assist the DMH in monitoring his compliance with all conditions of his release.

5) If at any time Mr. Ecker violates the conditions of his release, he is to be returned to federal custody.

Many aspects of the Warden's plan are prudent and reasonable. The transfer to state custody, whether to WSH or elsewhere, will likely be smoother if it is preceded by a transitional period in the general population at MCFP Springfield. The conditions of Mr. Ecker's release, such as

continued medical treatment and abstinence from contact with previous victims of unwanted attention, are precisely tailored to ensure that Ecker will not become a substantial risk to the community.

There are, however, two structural changes that this Court must impose on the conditional release plan before it can be entered. First, in accordance with this Court's Order of November 21, 2007, the period of confinement at Springfield must not *exceed* six months and second, when Ecker is transferred to the custody of the Commonwealth of Massachusetts, that transfer will be final. That is, because there are no grounds whatsoever on which the federal government may retain custody of Mr. Ecker, the plan of conditional release may provide no eventuality (short of the commission of a new federal crime) under which Ecker is to be returned to federal custody.

■ This Court is sensitive to the DMH's concerns about Ecker's history and current status but, as the November 21 Order made clear, continued incarceration in a federal facility is no longer an option. The conditions described below will be implemented in an effort to make Ecker's transfer to state custody as smooth and as safe as possible but they do not offer a prospect that the BOP will reassume responsibility for Ecker's care after he has been transferred to state custody. Therefore, any violation of the reasonable conditions identified by the Warden must carry, as the only consequence, the involuntary commitment to a state mental health care facility.

## III. *The Government's Motion for Reconsideration*

■ Under Fed.R.Civ.P. 59(e), a party may "direct the district court's attention to newly discovered material evidence or a manifest error of law or fact ... enabl[ing]

the court to correct its own errors." *Aybar v. Crispin–Reyes,* 118 F.3d 10, 15 (1st Cir.1997). A motion for reconsideration should be granted only if the court has patently misunderstood a party or there is a significant change in the law or facts since the submission of the issues to the court by the parties. *Reyes Canada v. Rey Hernandez,* 224 F.R.D. 46, 48 (D.P.R. 2004) (citing *Bank of Waunakee v. Rochester Cheese Sales, Inc.,* 906 F.2d 1185, 1191 (7th Cir.1990)).

In response to the Warden's proposal for Ecker's conditional release, the government has filed a motion for reconsideration of this Court's prior ruling that it has jurisdiction over the civil commitment proceeding. The government notes that the transfer statute, 28 U.S.C. § 1404(a), authorizes transfer only to another district where the action could originally have been brought. It further contends that the commitment statute, 18 U.S.C. § 4246(a), authorizes suit only in the district in which a committed prisoner is incarcerated (in this case, the District of Minnesota). Therefore, it asserts that because the action could not have been originally brought in the District of Massachusetts, District Judge Magnussen's transfer of the case to this district was improper and this Court should remand the case accordingly.

■ The government's motion identifies no patent misunderstanding and there has been no significant change in the law or the facts since this issue was first submitted to the Court. Judge Magnuson's unequivocal intention was to transfer the case here and, as this Court has held before, it remains unwilling to "assume an appellate function and review the appropriateness of another district court's transfer order". *United States v. Ecker,* 489 F.Supp.2d 130, 134 (D.Mass.2007). The motion for reconsideration will be denied.

## IV. *The Government's Motion for a Conditional Release Hearing Pursuant to 18 U.S.C. § 4246(e)*

### A. Request for a Hearing

As a preliminary matter, the government notes that the process described in the statute begins with a certification by the Warden that the patient has recovered to such an extent that his release no longer poses a substantial risk, and that no such formal certification has been filed in this case.

■ This Court has not requested formal certification from the Warden of MCFP Springfield because to wait for such certification to arrive would have the effect of further delaying an already unacceptably protracted process. The certifications described in §§ 4246(e) and (g) are intended to provide the Court and the government with the opinion of the Warden and the medical staff with respect to whether an inmate has recovered from his mental condition to such an extent that he may be released. This Court has received that opinion through other means, including periodic status conferences and reports from the staff at Springfield and from the government. In particular, the October, 2007 Risk Assessment Report provided just such a statement of opinion and this Court treats it as a constructive certification pursuant to § 4246(e). This Court held further, in its November 21, 2007 Memorandum and Order, that any request for a discharge hearing or attempt to reclassify Ecker as too dangerous for release would precipitate the requirement of § 4246(g) that he be released to the state immediately.

The discharge provision under which Ecker is to be conditionally released, 18 U.S.C. § 4246(e), provides that upon certification that a prisoner is fit for release,

The court shall order the discharge of the person or, on the motion of the attorney for the Government or on its own motion, shall hold a hearing ... to determine whether he should be released.

If, after the hearing, the court finds by a preponderance of the evidence that the person has recovered from his mental disease or defect to such an extent that—

(2) his conditional release under a prescribed regimen of medical, psychiatric, or psychological care or treatment would no longer create a substantial risk of bodily injury to another person or serious damage to the property of another, the court shall—

(A) order that he be conditionally discharged ...

The government asserts that the quoted language requires the Court to hold a hearing if it is requested and, in any event, that such a hearing is a prerequisite to implementing a plan of conditional release.

This Court clearly set forth, in its Memorandum and Order dated November 21, 2007, the process that would lead to Ecker's conditional release, stating in particular that there is "no circumstance under which" such a hearing would be held. *Ecker v. United States,* 2007 WL 4465468, *4 (D.Mass. Nov. 21, 2007). It is true that this case sits in a unique posture due to the particular facts and circumstances of Ecker's confinement. He has been incarcerated in federal custody for over 18 years without having been tried, convicted or sentenced. For the past two years he has been held without a charge pending against him. The statutory imperative is to effect his transfer to the custody of the state which is entrusted in the federal system with the care of mental patients. Procedural details such as the filing of a specific form of certificate or the holding of

a redundant hearing will not stand in the way of the resolution of this case.

### B. The Application of § 4246(g)

The government requests that this Court reconsider its contention that § 4246(g) does not apply to Ecker's case. It alleges that the dismissal of the indictment against him, in March, 2006, was based, in part, upon the fact that he had been incarcerated for longer than the sentence that would likely have been imposed had he been convicted but also, in part, because it appeared unlikely that he would ever be competent to stand trial. The government asserts that his release was therefore not "unrelated to his mental condition" and that § 4246(g) does not apply by its own terms.

■ First, § 4246(g) does not apply to Ecker's case because the Warden has submitted a plan of conditional release, as requested, and the next step in this process will be Ecker's release to state custody pursuant to § 4246(e). Because of the unusual circumstances of this case, that release will not be conditional in the ordinary sense of carrying the possibility that, if the terms of release are not met, Ecker may face a return to federal custody. Such conditions are precluded by the fact that there are simply no grounds for Ecker to be held in federal custody under the civil commitment statutes. Instead, in order to assure the safety of the community, he will be released directly into the custody of DMH, the agency with the legal authority to commit him to long-term custody should the need arise. The discussion of § 4246(g) in the November 21 Order served to underscore the irrevocable conclusion that Ecker, against whom no charges are pending, will no longer be held in federal custody.

Second, this Court is unabashedly capable of interpreting the terms of its own order issued less than two years ago. The November 21 Order detailed the reasons why this Court views the dismissal of Ecker's indictment as "unrelated to his mental condition" and nothing in the government's submission compels a change in that opinion.

### C. The "New Facts" and Reconsideration

■ The government repeatedly refers to the DMH's January 7, 2008 interview with Ecker and DMH's letter dated January 14, 2008 describing its concerns about his condition and its ability to provide for his care. The government describes those concerns as new facts which, brought to the Court's attention, call for the reconsideration of this Court's prior ruling with respect to the application of § 4246(g). Those facts, while relevant, are insufficiently novel to warrant an amendment of this Court's statutory interpretation. The salient facts remain that 1) the Warden has, in October, 2007, constructively certified that Ecker's conditional release does not pose a substantial risk to the community and 2) the dismissal of Ecker's indictment was for reasons unrelated to his mental condition. In light of the latter fact, even if the Warden's assessment (reflected in the former fact) were to change, § 4246(g) would compel Ecker's immediate release from federal custody without a transitional period in the general population at Springfield.

### V. *Ecker's Response*

Ecker's response to the proposed plan of conditional release refers to the differences noted above between that plan and the terms of the November 21 Order. He contends that the Warden's plan violates not only the Order but also § 4246. He urges that this Court treat it as a constructive certification that Ecker's release

would pose a substantial risk to the community and, pursuant to § 4246(g), demands his release to the state authorities accordingly.

As discussed above, however, this Court declines to treat the Warden's assessment as changed and accepts his opinion that Ecker is ready for conditional release. Just as the government solemnly records its "awesome responsibility" of ensuring that Ecker's release is as safe as possible, this Court acknowledges a similar responsibility to Ecker that he not be further detained in federal custody without due process of law.

Therefore, resolution of this case will proceed along the lines outlined in this Court's November 21 Order. The Warden's proposal will be adapted to bring it into accord with that Order and will be entered herewith.

### ORDER

In accordance with the foregoing, the government's motions for reconsideration and retransfer (Docket No. 24) and for a hearing pursuant to 18 U.S.C. § 4246(e) (Docket No. 27) and Ecker's motion for immediate release to state custody (Docket No. 26) are all **DENIED.** It is further ordered that,

1. The Warden of MCFP Springfield is encouraged to effect a transfer of Ecker's confinement to the general population of that facility as soon as practicable.

2. On or before June 30, 2008, the Warden shall commence the process of transferring custody of Ecker to the Massachusetts Department of Mental Health ("DMH") in the Commonwealth of Massachusetts, at the expense of the federal government. That transfer shall be completed, in any event, on or before July 31, 2008.

3. On the date of the transfer of Ecker's custody from the Federal Bureau of Prisons ("BOP") to the DMH, Ecker will either

   a) accept a conditional voluntary admission pursuant to Massachusetts General Laws chapter 123 §§ 10 and 11, to a DMH facility of its own choosing (in which event Ecker shall be included in his treatment planning) and consent to and accept all necessary assessments, treatment, rehabilitation interventions, testing and rules deemed necessary by the DMH (and as partially summarized in subparagraph 3 of the "Warden's Proposal" section of this Memorandum and Order), *or*

   b) submit a three-day notice of his intent to leave the designated DMH facility, which notice may be submitted at any time after the transfer of Ecker's custody from the BOP to the DMH (in which event DMH shall determine whether Ecker meets the criteria for civil commitment).

4. If, within the time allotted by statute after Ecker submits such three-day notice, DMH determines that Ecker meets the criteria for civil commitment, the DMH may file a petition for such commitment; otherwise Ecker will be unconditionally released.

**So ordered.**